# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYANT H. H.,[1]<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. 2:18-cv-10571-AFM<br><br>**MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING DECISION OF THE COMMISSIONER** |

Plaintiff seeks review of the Commissioner's final decision denying his application for supplemental security income benefits. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. This matter is now ready for decision.

## BACKGROUND

Plaintiff applied for supplemental security income in January 2015, alleging he was unable to work due to bipolar disorder, manic depression, epilepsy, and hepatitis C. Plaintiff's application was denied initially and on reconsideration. (Administrative Record ["AR"] 58-71, 74-89.) A hearing was held before an

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Administrative Law Judge ("ALJ") on August 2, 2017, at which Plaintiff, his attorney, and vocational expert ("VE") were present. (AR 33-57.) The ALJ issued a decision on February 7, 2018, finding that Plaintiff suffered from the following severe impairments: depression, substance abuse and seizure disorder. (AR 17.) The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a restricted range of medium work. As relevant here, the ALJ concluded that Plaintiff is able to understand and remember simple instructions, complete simple repetitive tasks, "works better with things than people," and should have no public contact. (AR 19.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff could perform work that exists in significant numbers in the national economy. (AR 24-25.) Accordingly, the ALJ determined that Plaintiff was not disabled from January 29, 2015 through the date of her decision. (AR 25.) The Appeals Council denied review, thereby rendering the ALJ's decision the final decision of the Commissioner. (AR 1-6.)

## DISPUTED ISSUE

Whether the ALJ provided legally sufficient reasons for discounting the opinions of Plaintiff's treating physicians.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630

(9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, [the court] may not substitute [its] judgment for that of the ALJ.").

## DISCUSSION

### A. Relevant Evidence[2]

The ALJ discussed the following evidence related to Plaintiff's mental impairments. First, the ALJ noted the May 13, 2015 medical source statement completed by Plaintiff's treating physician, Edward Cavanagh, M.D. Dr. Cavanagh indicated that he treated Plaintiff from January 1996 through February 4, 2015. (AR 337.) He diagnosed Plaintiff with adjustment disorder with depressed mood and polysubstance dependence. On Axis IV, Dr. Cavanagh diagnosed Plaintiff as suffering from "problems with: primary support group, social environment, educational, occupational, housing, economics, access to health care, and interaction with the legal system." He assessed Plaintiff with a GAF of 51. (AR 336.)

In Dr. Cavanagh's opinion, Plaintiff was moderately limited in his activities of daily living, indicating that reminders and/or prompts are often needed, and Plaintiff required additional support with "more sophisticated tasks." In addition, Dr. Cavanagh noted that Plaintiff had a limited capacity to learn and retain new information regarding activities of daily living. (AR 335.) With regard to social functioning, Dr. Cavanagh opined that Plaintiff demonstrated limitations with communication and language skills which led to negative impacts with peer and family relationships. In addition, he noted that Plaintiff had a limited ability to interpret social cues, resulting in "impaired functioning in all settings" which had historically led to "to instability in relationships across all settings." (AR 335.) In Dr. Cavanagh's opinion, Plaintiff is able to understand simple instructions, but a limited ability to process multi-step instructions. Further, he opined that Plaintiff's

---

[2] The issue raised by Plaintiff involves only the evidence regarding his mental impairments. Accordingly, the Court limits its discussion of the record to evidence relevant to that claim.

impairments with attention and concentration necessitate support and/or re-direction for tasks completion, and Plaintiff is able to complete only limited tasks independently. (AR 336.) According to Dr. Cavanagh, Plaintiff's impairments limit his ability to function in a work setting because his "inabilities with self-regulation and social functioning create instabilities in settings normed for the general population." (AR 336.) Finally, Dr. Cavanagh opined that changes in Plaintiff's functional abilities were likely to be limited. (AR 336.)

Next, the ALJ discussed the May 2015 opinion of State agency psychologist R. Phillips, Ph.D. Dr. Phillips reviewed the record and assessed Plaintiff with moderate limitations in numerous functional abilities, among them, the ability to carry out short and simple instructions; perform activities within a schedule; maintain regular attendance; sustain an ordinary routine without special supervision; work in coordination with or proximity to others; accept instructions and respond appropriately to criticism from supervisors; respond to changes in the work setting; travel in unfamiliar places or use public transportation, among others. Dr. Phillips assessed marked limitations in Plaintiff's ability to maintain attention and concentration for extended periods and ability to interact appropriately with the general public. (AR 68-70.)

The ALJ considered the October 30, 2015 opinion of State agency psychologist P. Kresser, Ph.D. After reviewing the record, Dr. Kresser assessed limitations similar to those assessed by Dr. Phillips. (AR 85-86.)

Finally, the ALJ discussed the July 7, 2017 "Mental Disorder Questionnaire Form" completed by Plaintiff's treating physician, Jason Yang, M.D. According to Dr. Yang, he treated Plaintiff from August 2014 to May 2017. (AR 612.) He diagnosed Plaintiff with Persistent Depressive Disorder (Dysthymia) and Severe Opioid Use Disorder. Dr. Yang observed that Plaintiff presented as restless with unimpaired speech, normal eye contact, concentration impaired by rumination and average grooming/hygiene. The form asked about Plaintiff's complaints and

symptoms, including verbatim quotes about how Plaintiff described his symptoms. Dr. Yang responded that Plaintiff' reported symptoms associated with Dysthymic Disorder, including difficulty concentrating, low energy, tearfulness, difficulties managing impulsive behavior and mood regulation that impacts his daily activities and interactions with others. (AR 608.) Dr. Yang's mental status examination revealed that Plaintiff's cognitive functioning appeared to be intact, he had no apparent disturbance in thought content or process, and good insight as to how mental illness has impacted his functioning.[3] (AR 609.) Dr. Yang noted that Plaintiff demonstrated appropriate interactions with peers and staff but poor impulse control and ability to regulate emotions. He opined that due to symptoms of dysthymia, Plaintiff has trouble concentrating and regulating mood, and his "insight and judgments are impaired due to rumination and history of trauma related to prostitution, family, incarcerations, and sexual orientation." (AR 609-610.) In Dr. Yang's opinion, Plaintiff has diminished capacity to maintain concentration and work independently when depressed. In addition, Plaintiff has "difficulty with emotional regulation and impulse control resulting in difficulty staying focused on single tasks and making decisions." (AR 611.) Dr. Yang's prognosis indicates that Plaintiff has a "greatly diminished capacity to maintain concentration, and manage symptoms related to depression." (AR 612.)

**B. Law**

In determining a claimant's RFC, an ALJ must consider all relevant evidence of record, including medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). "There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians."

---

[3] The Court notes that some of the records refer to Plaintiff as "she," and there is evidence indicating that Plaintiff has or is undergoing a transgender transition. (*See* AR 609, 1388.) Plaintiff's memorandum refers to Plaintiff using the masculine pronoun (*see*, ECF No. 10 at 1), and the Court adopts the same for purposes of this opinion.

*Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The medical opinion of a claimant's treating physician is entitled to controlling weight so long as it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). If a treating physician's medical opinion is uncontradicted, the ALJ may only reject it based on clear and convincing reasons. *Trevizo*, 871 F.3d at 675; *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating physician's opinion is contradicted, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record before rejecting it. *Trevizo*, 871 F.3d at 675; *Ghanim v. Colvin*, 763 F.3d 1154, 1160-1061 (9th Cir. 2014). Even when a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Trevizo*, 871 F.3d at 676; *see* 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (citations and internal quotation marks omitted).

**C. Analysis**

Because the opinions of Drs. Cavanagh and Yang were, in part, contradicted by the opinions of the State Agency physicians, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting them. *Trevizo*, 871 F.3d at 675.

In rejecting the opinions of Drs. Cavanagh and Yang, the ALJ's decision explains as follows:

> In sum, the above residual functional capacity assessment is supported by finding unpersuasive, the findings and opinions from [Plaintiff]'s treating physicians, Drs. Yang and Cavanagh (Ex. 12F-13F) finding the opinions are not supported by symptoms outlined in any medical record. The opinions are not consistent with the evidence, as noted in this decision, and appear to be based on [Plaintiff]'s subjective complaints versus any objective findings.

(AR 24.) Thus, the ALJ provided two reasons for rejecting the opinions of Drs. Yang and Cavanagh – (1) they were inconsistent with or not supported by the medical evidence and (2) they were based upon Plaintiff's subjective complaints.

### 1. Opinions Inconsistent with the Medical Record

Generally, a finding that the treating physician's opinion is unsupported by the record is a legitimate basis for discounting that opinion. *See Tommasetti*, 533 F.3d at 1041 (ALJ may reject a treating physician's opinion that is inconsistent with other medical evidence, including the physician's own treatment notes); *Batson*, 359 F.3d at 1195 (ALJ may discredit treating physician's opinion where it is unsupported by the record as a whole or by objective medical findings).

Here, however, the ALJ failed to identify any specific inconsistencies between the medical evidence and any particular opinion of either Dr. Cavanagh or Dr. Yang. Instead, the ALJ summarily concluded that "the opinions" were unsupported and inconsistent with "the evidence, as noted in this decision." (AR 24.) Merely invoking the boilerplate language that the multiple (and varied) opinions of two separate treating physicians was inconsistent with undefined portions of the record does not amount to a sufficient and specific reason for rejecting them. *See Garrison v. Colvin*, 759 F.3d 995, 1012-1013 (9th Cir. 2014) ("an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion");

*Kinzer v. Colvin*, 567 F. App'x 529, 530 (9th Cir. 2014) (ALJ's decision that treating physician's opinion was "not well-supported by the ... other objective findings in the case record," and "contrast[ed] sharply with the other evidence of record" were "insufficient to dispose of the treating doctor's opinions"); *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required...."); *Carbajal v. Berryhill*, 2018 WL 1517161, at *3 (C.D. Cal. Mar. 27, 2018) ("Merely invoking the boilerplate language that Dr. Park's opinion lacked objective support or was inconsistent with undefined portions of the record reflecting moderate findings does not amount to a sufficient and specific reason for rejecting the opinion.").

In arguing that the ALJ's reason was specific and legitimate, the Commissioner points to the following evidence cited by the ALJ:

(1) In support of her conclusion that Plaintiff's limitations in understanding, remembering, or applying information were mild to moderate, the ALJ cited evidence that Plaintiff was able to understand and remember instructions for treatment of administering medication for a bout of acute femoral deep venous thrombosis. (AR 18, citing AR 465, 468, 471.) The records relied upon by the ALJ reveal that after Plaintiff obtained medical treatment for deep venous thrombosis, he was instructed on medication injection. According to the treatment notes, Plaintiff was able to "clearly express instructions on how to inject Lovenox," and "verbalized understanding re: taking med (Lovenox) as prescribed." (AR 465, 468, 471.)

(2) In concluding that Plaintiff's limitations in interacting with others were moderate, the ALJ cited treatment notes reflecting that in February 2015, "sources at Star Clinic observed [Plaintiff] to be conversant, goal directed and appropriate," and

in January 2016, the same sources observed Plaintiff "to be animated, pleasant and appropriate." (AR 18, citing AR 326, 190, 450.)[4]

(3) In concluding that, contrary to the opinion of "a treating source," Plaintiff's ability to adapt or manage himself was mild to moderately limited, the ALJ cited a record from Star Clinic reflecting that Plaintiff lived alone and knew how to get home by taking public transportation. (AR 19, citing AR 516.) The ALJ found it significant that before being discharged, Plaintiff asked hospital staff if it was safe for him to take the bus home, which she interpreted as demonstrating that Plaintiff was "mindful about his care and safety." (AR 19, citing 517.)

As an initial matter, the Court notes that it is debatable whether the foregoing evidence supports the inferences drawn by the ALJ. For example, evidence that on one occasion, Plaintiff verbally indicated that he understood how to inject himself with medication does not necessarily undermine Dr. Cavanagh's opinion that Plaintiff would be able to learn and retain new information regarding activities of daily living "within a limited capacity." Similarly, it is not clear that evidence that Plaintiff lived alone, knew how to take the bus home, and was coherent enough to ask hospital staff whether taking the bus was safe necessarily undermined Dr. Cavanagh's opinion that Plaintiff often needed reminders or prompts to complete tasks.

More importantly, even assuming that these records are reasonably interpreted as inconsistent with the treating physicians' opinions, the ALJ's decision improperly relies upon isolated portions of the medical record while failing to consider the evidence as a whole. An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster her findings. *See Holohan v. Massanari*, 246 F.3d 1195, 1207-1208 (9th Cir. 2001) (an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

---

[4] The complete observation by the treatment source states, "Pt conversant, goal directed and appropriate, speaks in a slow cadence." (AR 326.)

Moreover, this sort of selective reading of the record is particularly troublesome with regard to mental impairments such as Plaintiff's. As the Ninth Circuit has explained, symptoms of mental impairments "wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017 (citing *Holohan*, 246 F.3d at 1205 ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect [his] ability to function in a workplace.")).

Plaintiff's mental health treatment at Project 180 commenced in August 2014, and he received treatment continuously to the date of the hearing. Not only was Plaintiff treated by both Dr. Cavanagh and Dr. Yang, as well as Stephen Field, M.D., but he underwent extensive individual and group therapy sessions. These mental health records take up hundreds of pages of the administrative record. (*See* Exhibits 14F & 17F at AR 628-1055, 1265-1422.) Yet, the ALJ's decision makes no mention of any of these treatment records. While the Court's independent review reveals that some treatment notes may support the ALJ's conclusion, many of the treatment notes arguably support the opinions of Plaintiff's treating physicians. At a minimum, the records indicate that Plaintiff's mental condition fluctuated. For example, the record includes treatment notes revealing that at various times, Plaintiff was withdrawn, showed poor concentration, required continuance redirection, failed to comply despite multiple interventions, had poor eye contact, was unresponsive, had blunted affect, had problems following directions, exhibited poor impulse control and rumination, and his speech was slurred, soft or unclear. (*See*, *e.g*., AR 628, 645, 941, 945-946, 985, 1004, 1266, 1302, 1389, 1390, 1409, 1411, 1413.)

In sum, the ALJ's decision is conclusory and fails to identify which opinions of which treating physician are inconsistent with what portions of the record. In addition, to the extent that the ALJ does identify specific evidence she found inconsistent with the treating physicians' opinions, she improperly singled out records undermining the treating physicians' opinions while ignoring portions of the record that arguably support those opinions.

2. Opinions Based upon Subjective Complaints

The ALJ also found that the opinions of Drs. Cavanagh and Yang "appear to be based upon [Plaintiff]'s subjective complaints versus any objective findings." (AR 24.)

Generally, a physician's opinion "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (internal quotation marks and citation omitted)). The Commissioner points out that Plaintiff does not contest the ALJ's credibility determination and, therefore, argues that the ALJ properly rejected the treating physicians' opinions on the ground that they were based upon Plaintiff's subjective complaints. (ECF No. 25 at 6.)

In the circumstances presented here, the Commissioner's argument is unpersuasive. To begin with, as with the ALJ's first reason for rejecting the treating physicians' opinions, the ALJ's reasoning in this regard is essentially conclusory. The ALJ fails to differentiate among the numerous opinions by the two different physicians. That is, the decision does not identify which opinions by which of Plaintiff's treating physicians the ALJ considered to be based solely upon Plaintiff's subjective complaints. Moreover, because the ALJ failed to acknowledge the treatment notes from either of the treating physicians or any of the other treating sources at Project 180 (upon which the treating physicians presumably relied) and

because at least some of those treatment notes include what appear to be objective findings, the ALJ's conclusion is not supported by substantial evidence.

More importantly, the ALJ's blanket rejection of the treating physicians' opinions on this ground was improper. As the Ninth Circuit has explained,

> Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry. *See Poulin* [*v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987)] ("[U]nlike a broken arm, a mind cannot be x-rayed.").Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness. In the context of this case, [the treating physician's] partial reliance on Buck's self-reported symptoms is thus not a reason to reject his opinion.

*Buck*, 869 F.3d at 1049; *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology....") (quoting *Poulin*, 817 F.2d at 873–874).

### 3. Additional Reason Suggested by the Commissioner

With regard to Dr. Yang, the Commissioner argues that his "opinion of diminished capacity was inconsistent with his observations of Plaintiff's intact cognitive functioning," which was a proper reason for the ALJ to discount his opinion. (ECF No. 25 at 4.) The ALJ, however, did not purport to rely upon an internal inconsistency as a basis for rejecting Dr. Yang's opinion, and the Court cannot affirm the ALJ's decision on a ground that the ALJ did not specifically invoke. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (reviewing court is constrained to reviewing the reasons the ALJ asserts); *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground

not actually relied on by the agency"); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

Accordingly, the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Drs. Cavanagh and Yang.

### D. Harmless Error

The Commissioner argues that any error was harmless because Plaintiff has failed to show that the ALJ's RFC did not "properly capture" the limitations opined by either Dr. Cavanagh or Dr. Yang. According to the Commissioner, limiting Plaintiff to occupations involving simple repetitive tasks with no public contact "fully accommodated" the opinions of both treating physicians. (ECF No. 25 at 4, 6-7.)

The Commissioner is correct that an ALJ's RFC assessment may sufficiently account for a physician's opinion regarding limitations without using the same language as the physician. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-1174 (9th Cir. 2008). So, for example, an RFC may account for a physician's opinion that the claimant suffers from moderate difficulties in concentration and persistence by assessing an RFC restricting the claimant to simple, routine, repetitive tasks. *See Hughes v. Colvin*, 599 F. App'x 765, 766 (9th Cir. 2015); *Stubbs-Danielson*, 539 F.3d at 1171. Similarly, an RFC for work without public interaction adequately accommodates a physician's opinion that the claimant is moderately limited in social functioning. *Hughes*, 599 F. App'x at 766.

Here, the ALJ assessed Plaintiff with an RFC limiting him to simple, repetitive tasks and no contact with the public. This RFC may fairly accommodate some of the treating physicians' opinions. However, contrary to the Commissioner's suggestion, the ALJ did not accommodate all of the opinions of Drs. Cavanagh and Yang regarding Plaintiff's limitations. In fact, as set forth above, the ALJ unequivocally

13

and explicitly rejected both physicians' opinions in total. (AR 24.) The ALJ also specifically rejected Dr. Cavanagh's opinions that Plaintiff was limited in his ability to learn and retain new information, was unable to self-regulate thereby creating instability in settings "normed for the general population," and often needed reminders or prompts to complete tasks. (*See* AR 18-19.) The ALJ's decision also implicitly rejected Dr. Cavanagh's opinion that Plaintiff's impairments with attention and concentration necessitate support and/or re-direction for tasks completion, and that Plaintiff is able to complete only limited tasks independently

Notwithstanding the Commissioner's invitation, the Court cannot conclude that all of these opinions are subsumed within the ALJ's RFC restricting Plaintiff to simple, repetitive tasks and no contact with the public. *See*, *e.g.*, *Lisardo S. v. Berryhill*, 2019 WL 773686, at *5 (C.D. Cal. Feb. 20, 2019) (RFC restricting plaintiff to simple work, limited contact with the public, and a predictable routine did not necessarily accommodate physician's opinion that plaintiff was limited in abilities to (a) relate to coworkers, (b) perform work without special or additional supervision, and (c) complete a normal workday or workweek); *Raymond v. Berryhill*, 2018 WL 3691842, at *6 (C.D. Cal. Aug. 2, 2018) ("Although the ALJ's restriction for unskilled work may encompass Plaintiff's moderate limitations in concentration, persistence, and pace, the RFC does not sufficiently account for Plaintiff's moderate limitations in performing routine work duties and maintaining consistent attendance in the workplace."); *Atkinson v. Colvin*, 2015 WL 5840210, at *3 (C.D. Cal. Oct. 5, 2015) (RFC restriction to non-complex tasks "may encompass the concentration, persistence, and pace limitations assessed" by physician, but did "not sufficiently account for Plaintiff's moderate limitations in performing activities within a schedule, maintaining regular attendance in the workplace, or completing a normal workday and workweek without interruption"); *Hunter v. Colvin*, 2015 WL 501466, at *1 (C.D. Cal. Feb. 5, 2015) (ALJ's RFC limiting claimant's contact with the public

did not account for physician's opinion that claimant was limited in ability to interact with co-workers and supervisors).

Crediting some or all of the opinions of either Dr. Cavanagh or Dr. Yang would likely have affected the ALJ's RFC and, consequently, the hypothetical posed to the VE. *See Ghanim*, 763 F.3d at 1166. Accordingly, the Court cannot conclude that the ALJ's error was harmless.

**REMEDY**

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. . . . If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record on the whole is not fully developed, and factual issues remain outstanding. The issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter*, 806 F.3d at 496; *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act).

Accordingly, the appropriate remedy is a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[5]

---

[5] It is not the Court's intent to limit the scope of the remand.

15

IT IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.

DATED: 11/25/2019

ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE